DEWEY R. ECKBERG AND ANOTHER v. TRACKAGE OIL COMPANY AND ANOTHER.[1]

May 10, 1940.

No. 32,282.

*Hanson & Willcox,* for appellants.
*Louis B. Schwartz,* for respondents.

JULIUS J. OLSON, JUSTICE.

Plaintiffs at the conclusion of the trial were met with an instructed verdict for defendants. Their motion for new trial was denied, and they appeal.

Their complaint, divided into two alleged causes of action, charged: (1) That defendants by means of fraud, conspiracy to

[1]Reported in 292 N. W. 19.

defraud, and by false representations secured from them certain stock certificates in the Allen Oil Company, a Wisconsin corporation, organized by plaintiffs and one N. L. Allen in April, 1936. Under it they seek to recover either the stock or the value thereof; and (2) as an alternative and in event the first cause fails, that they be permitted to recover the value of a Minneapolis oil station acquired by them by virtue of a settlement made in December, 1936, between plaintiffs, the Allen company, and defendants, the title to which was guaranteed by defendants, that title failed, hence recovery was sought for its value.

With respect to the first cause the facts are these: Both plaintiffs are inexperienced in business affairs. The oil business was to them a new and untried venture. When they incorporated the Allen Oil Company they risked what little available capital they had, each plaintiff contributing $1,400. Allen contributed no cash; instead, his "experience" in the oil business was considered of equal value to what each plaintiff had contributed. And so 75 shares of no par value stock were issued and equally divided amongst them. As a bookkeeping item Allen's "experience" contribution was carried as "good will" at $1,400. Later Brunsell put in an additional $1,000, taking the Allen company's promissory note for that sum. All of them drew salaries at the rate of $150 per month from April until the end of 1936, when plaintiffs transferred their stock in the Allen company to defendants.

The Allen company shortly after its formation acquired some stations in Wisconsin, but these proved unprofitable as there was a price war in the localities where they were operating. These stations showed increasing losses from month to month. In August the Allen company acquired a station in Minneapolis from defendant company, for which it agreed to pay $2,500, also some merchandise therein valued at $917.68. Nothing was paid, promissory notes only being given in the amounts mentioned. The business continued until toward the end of December, when it was found that the Allen company was heavily indebted to defendant trackage company, in all amounting to over $8,600. All the obli-

gations of the Allen company were unsecured. Naturally and properly, that defendant insisted that these matters could not go along in this fashion but would have to be taken care of. (Paulson was the principal owner of defendant company and its active manager. He is the man with whom the Allen company dealt.) On December 29, after repeated conferences, the following arrangement was then made: Plaintiffs were given the cash in bank and standing to the credit of Allen Oil Company, $627.23; petty cash in the drawer, goods on hand, service deposits, accounts receivable, prepaid insurance, also a truck (value or cost not shown) paid for by the Allen company but taken over by plaintiff Eckberg and by him sold, in all amounting to more than $1,600. The $2,500 note given by the Allen company was cancelled as to plaintiffs, as was also the $917.68 note given for the Minneapolis station merchandise account. In addition, plaintiffs received a bill of sale conveying title to the Minneapolis station and a guaranty that title thereto would be protected by defendants. In exchange for the foregoing plaintiffs surrendered their 50 shares of stock in the Allen company, and plaintiff Brunsell cancelled his $1,000 note given him by that company. To balance the settlement, plaintiffs also executed and gave to the Allen company their unsecured promissory note for $1,100 due one year thereafter.

As will be seen from the foregoing recital, fraud is not easily discernible. Plaintiffs have received out of the enterprise much more than they put into it and sold what obviously was then a losing business venture. The proof in respect to the value of the stock surrendered is utterly lacking in substance. They are but wild guesses upon which no trier of fact could find a value beyond then existing obligations against the Allen company. As disclosed by the record, the December deal was a most fortunate one for plaintiffs. The court in its memorandum states that:

"The evidence fails to establish fraud but shows that the plaintiffs entered into an unfortunate business venture. Their misfortunes were increased by the extreme difficulty of the venture

itself and the lack of experience which the plaintiffs possessed for the conduct of such a business."

We go next to the question of failure of title in respect to the Minneapolis station. On this phase it is equally apparent that the plaintiffs were not ousted or deprived of possession by reason of any outstanding superior title. There is no evidence that any third party had or asserted a title superior to that granted by defendants. Plaintiffs' only claim of disturbance in respect of their possession is that one Palmer, acting for defendant company, told them that they should not remove the purchased property until they had paid the $1,100 note, falling due within a month, and asked them not to do so until he could confer with an officer of defendant company having authority to act. Instead of complying with Mr. Palmer's reasonable suggestion in this respect plaintiffs "threw the keys of the station on the desk," claimed fraud, and left the station. This suit followed immediately. Obviously there was wholly lacking proof of an actual or threatened ouster on the part of anyone. This alleged cause of action apparently is a pure afterthought and has in fact nothing of substance to sustain it. The record leaves no doubt that the trial court rightly disposed of the cause, and its order is affirmed.

Affirmed.